United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORTHERN CALIFORNIA MAILERS
UNION,

                Plaintiff,

   v.

SAN FRANCISCO CHRONICLE,

                Defendant.

_____/

No. C 06-00474 CRB

**MEMORANDUM AND ORDER**

Plaintiff Mailers Union filed a complaint to compel arbitration of a labor dispute between the Union and the San Francisco Chronicle regarding a purported oral promise made by the Chronicle during negotiations for a Supplemental Agreement ("SA") to the Collective Bargaining Agreement ("CBA"). Defendant has declined to submit to arbitration to resolve this dispute. Now pending before the Court is plaintiff's motion for summary judgment to compel arbitration of this dispute. Defendant has fashioned its Opposition as a cross-motion for summary judgment. After carefully considering the parties' briefs, and with the benefit of an extended oral argument, plaintiff's motion is hereby DENIED and defendant's cross-motion is hereby GRANTED.

**BACKGROUND**

**I.    Factual Background**

Plaintiff Mailers Union is one of nine craft unions that had collective bargaining agreements with the Chronicle at all relevant times. Plaintiff represents defendant's

employees who handle newspapers and other publications produced by defendant's presses. In the past, the nine unions had jointly negotiated an economics package while separately negotiating a collective bargaining agreement on other issues, all of which generally had a common expiration date.  The CBA at issue here expired on July 1, 2005.

In 2002, defendant encountered financial difficulties and approached plaintiff to negotiate a separate Supplemental Agreement to defray labor costs.  In May 2003, the parties finalized the SA, which did not directly address the existing wage scale in the CBA.  The SA, which expires in 2010, is 58 pages long and includes eight side letter agreements which were negotiated after the Agreement was reached but are considered to be included within the Agreement.

The merits of this particular dispute arise out of the negotiations surrounding the SA. In particular, the dispute concerns a purported oral agreement between the parties "concerning the wages that were to be offered by the Chronicle to the Union [during CBA negotiations] in 2005."  Pl. Mem. at 5.  Plaintiff alleges that defendant orally promised to either negotiate the "wage package for the Union in 2005" through joint negotiations, or alternatively to offer the wage package given to the Teamsters Local 853 in their supplemental agreement with defendant, which was reached through separate negotiations after the SA between plaintiff and defendant at issue here. Furthermore, plaintiff contends that this oral promise is a term of the SA.

Defendant, on the other hand, asserts that the parties never reached an oral agreement about future wages.  Moreover, even if there was such an agreement, defendant contends that it was not part of the SA and is therefore not arbitrable under the arbitration provisions of the SA.  Finally, defendant argues that the exclusion clause within the dispute resolution provisions of the CBA exempts this dispute from arbitration in the event that the CBA applies here.

//

//

//

**II.     The Arbitration and Grievance Provisions**

The Supplemental Agreement provides in relevant part:

23.1    Should grievances arise as to the interpretation, application or compliance with the terms of this Agreement, a diligent effort shall be made to resolve them promptly after they have been presented.

23.1.1 Forty-eight (48) hours after any grievance is brought to the attention of the Packaging Center Manager a meeting will be scheduled to attempt to resolve the dispute promptly.

23.1.2 If the meeting fails to resolve the dispute, it may be referred by either party to the grievance and/or arbitration procedures established by the parties' Collective Bargaining Agreement for the settlement of disputes.

The Collective Bargaining Agreement includes the following arbitration procedures, in relevant part:

Section 29    Joint Standing Committee

(c)     The Joint Standing Committee is established by the terms of this Agreement for the settlement of the disputes herein enumerated and is the proper body to take up such disputes in the first instance and to settle them finally in the manner herein provided.

To the Joint Standing Committee shall be referred all disputes arising under this Agreement, the construction to be placed on any clause of the Agreement, and any and all disputes between the parties except as otherwise provided for in this Agreement.

(d)     The Joint Standing Committee shall have complete jurisdiction over all the aforesaid disputes.  The Joint Standing Committee shall have no jurisdiction over the settlement of a new wage scale and a new contract between the parties hereto.

1    (e)    It shall require the affirmative vote of at least three (3) of the four (4) members

2           of the Joint Standing Committee to decide the issues and the decision of the

3           Joint Standing Committee shall be final and binding on the parties hereto.

4    (f)    If the Joint Standing Committee cannot reach an agreement on any dispute

5           within five (5) days ..., such dispute shall be referred to arbitration in

6           accordance with the procedure set forth in subsection (g) hereof. [...]

7           ...

8    (i)    The decision including remedies issued by the arbitrator shall be final and

9           binding.  All issues concerning arbitrability shall be submitted only to the

10          arbitrator for decision and such decision shall be final and binding.

11   **III.    Procedural History**

12          On June 16, 2005, Chuck Davis, plaintiff's secretary-treasurer, wrote a letter to

13   defendant noting that defendant, in writing and in person, had indicated it would not be

14   jointly negotiating the wage scale with other unions and that it sought to reduce the wages of

15   plaintiff's members as part of negotiations to extend the CBA.  Plaintiff further reiterated its

16   position regarding the oral agreement at issue here and stated: "The Supplemental Agreement

17   contains an arbitration clause ..., and you should consider this letter as invoking that clause

18   and making a demand to pursue our claim of the violation in accordance with the procedures

19   provided therein."  <u>See</u> Decl. of Charles Davis, Exh. C.  Defendant steadfastly refuted

20   plaintiff's characterization of the agreement and their obligations under it, and this

21   disagreement held up the renegotiation of the CBA.  On December 20, 2005, plaintiff

22   reiterated its demand for a Joint Standing Committee meeting to adjudicate its grievance.  <u>Id.</u>

23   Exh. E.  Defendant maintained its position that the dispute was not arbitrable, and plaintiff

24   filed the instant lawsuit on January 24, 2006.

25          On April 20, 2006, plaintiff filed this motion for summary judgment to compel

26   arbitration before initial discovery occurred.  On May 19, 2006, after initial disclosures were

27   made and with the benefit of one deposition permitted by the Court, defendant filed its

28

4

1    Opposition which it also fashioned as a cross-motion for summary judgment.  Plaintiff filed

2    its Reply on May 26, 2006, and oral argument was held on June 9, 2006.

## DISCUSSION

**I.      Legal Standard**

5            The narrow issue before the Court is to determine whether the dispute about the

6    purported oral agreement on future wages is subject to arbitration procedures agreed to by the

7    parties.  It is well settled that a court cannot force a party into arbitration; rather, both parties

8    must agree to enter into arbitration.  See AT&T Technologies, Inc. v. Communications

9    Workers of America, 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior &

10   Gulf Navigation Co., 363 U.S. 574, 582 (1960)).  Where a contract includes an arbitration

11   clause, there is a presumption of arbitrability.  Id. at 650 (quoting Warrior & Gulf, 363 at

12   582-583) ("An order to arbitrate the particular grievance should not be denied unless it may

13   be said with positive assurance that the arbitration clause is not susceptible of an

14   interpretation that covers the asserted dispute.").  Generally, "the question of arbitrability ...

15   is undeniably an issue for judicial determination."  Id. at 649.  Yet the Supreme Court has

16   created an exception to this general rule concerning substantive arbitrability where "the

17   parties clearly and unmistakably provide otherwise."  Id.; see also Brotherhood of Teamsters

18   and Auto Truck Drivers Local No. 70 v. Interstate Distributor Co., 832 F.2d 507, 510 (9th

19   Cir. 1987) ("Under AT&T Technologies, the parties to a collective bargaining agreement are

20   free to provide that an arbitrator shall decide the question whether they agreed to arbitrate a

21   dispute, i.e. the question of substantive arbitrability, but only if they leave no doubt that such

22   was their intent.")

**II.     Supplemental Agreement**

24           Both parties agree that the starting point for this analysis is the Grievance Procedure

25   under Article 23 of the Supplemental Agreement.  Article 23.1 establishes that the grievance

26   procedure applies to grievances that "arise as to the interpretation, application or compliance

27   with the *terms of this Agreement*...."  Decl. of Brendan Dolan, Exh. D at 33 (emphasis

28   added).  If applicable, and if the dispute is not resolved in a meeting between the parties,

United States District Court

For the Northern District of California

1    Article 23.1.2 states that the grievance "may be referred by either party to the grievance

2    and/or arbitration procedures established by the parties Collective Bargaining Agreement for

3    the settlement of disputes."[1]

4         If, as plaintiff's counsel asserts despite deposition testimony from plaintiff's secretary-

5    treasurer to the contrary, the purported agreement is a "term of [the] Agreement," then

6    Article 23.1.2 applies here and the Court must look to the arbitration procedures set forth in

7    the CBA.  The only provision of the CBA that addresses such procedures is Section 29,

8    which is entitled "Joint Standing Committee."  At oral argument, plaintiff argued that Article

9    23.1.2 of the SA adopts the procedures established in Section 29 of the CBA in its entirety.

10   The Court agrees.  If the underlying dispute concerns a term of the SA, then the Court must

11   analyze the provisions of Section 29.

12        If, however, as defendant asserts, the purported agreement is not a "term of [the]

13   Agreement," then Article 23 of the SA does not apply to this dispute.  But that does not end

14   the inquiry, as defendant would have it, because the SA is not the only binding agreement

15   between the parties.  In fact, the CBA includes an exceptionally broad provision that confers

16   complete jurisdiction on the Joint Standing Committee regarding "all disputes arising under

17   this Agreement, the construction to be placed on any clause of the Agreement, and *any and*

18   *all disputes between the parties* except as otherwise provided for in this Agreement."  Decl.

19   of Charles Davis, Exh. I at 20 (emphasis added).  The "any and all disputes" language must

20   be construed in the broadest terms because Section 29(c) separately confers jurisdiction to

21   the Joint Standing Committee over "all disputes arising under this Agreement."  Moreover,

22   both parties acknowledge that this matter is a dispute between the parties to the CBA.  As a

23   result, Section 29 of the CBA applies to this dispute even if the grievance does not address

24   the "interpretation, application or compliance with the terms of this Agreement."  Thus, the

25   Court need not decide whether the dispute concerns a term of the SA because in either case,

26   Section 29 of the CBA would apply to this dispute.

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯

28        [1]The CBA expired on July 1, 2005.  Plaintiff, however, initially informed defendant of
     its grievance on June 16, 2005, while the CBA was still in effect.  Therefore, where applicable,
     the provisions of the CBA apply to this matter.

**United States District Court**

For the Northern District of California

6

1    This determination is further consistent with the broader interplay of the Supplemental

2  Agreement and the Collective Bargaining Agreement.  Article 23 does not conflict with the

3  provisions of Section 29 because it is focused on including grievances arising under the SA

4  within the dispute resolution procedures set forth in the CBA.  If a grievance does not arise

5  under the SA, however, there is nothing in the SA that would prohibit the CBA from

6  applying to it.  Therefore, Article 1 of the SA–which establishes that the SA supercedes the

7  CBA "[i]n the event of any inconsistency or any conflict" between the provisions of the two

8  agreements–is irrelevant here because there are no conflicts or inconsistencies between the

9  SA and the CBA.

10  **III.     Section 29 of the CBA**

11    Section 29 of the CBA sets forth the dispute resolution procedures of the CBA.

12  Section 29 first establishes the Joint Standing Committee "for the settlement of the disputes

13  herein enumerated and is the proper body to take up such disputes in the first instance and to

14  settle them finally in the manner herein provided." Section 29(c), Davis Decl., Exh. I at 20.

15  Moreover, Section 29 confers to the Joint Standing Committee "complete jurisdiction"over

16  all disputes included in Section 29(c), "except as otherwise provided for in this agreement."

17  Id.  The CBA expressly states that the "Joint Standing Committee shall have no jurisdiction

18  over the settlement of a new wage scale and a new contract between the parties hereto."  Id.,

19  Section 29(d).

20    Section 29 further provides a final and binding method by which the Joint Standing

21  Committee can resolve matters that come before it.  Id., Section 29(e).  If the Joint Standing

22  Committee cannot resolve the dispute internally, Section 29 then establishes a mechanism

23  through which the Joint Standing Committee refers the dispute to arbitration.  At that point,

24  "[a]ll issues concerning arbitrability shall be submitted only to the arbitrator for decision..."

25  Id., Section 29(i).

26    The arbitration procedures of Section 29 outlined above and applicable here

27  effectively create a three-step process to resolve disputes under the CBA.  First, the Joint

28  Standing Committee must have jurisdiction over the dispute.  Second, the Joint Standing

1  Committee must attempt to resolve the dispute internally.  Third, if the Joint Standing

2  Committee cannot resolve the dispute internally, it must then refer the matter to arbitration.

3  In other words, Section 29 establishes a process by which the Joint Standing Committee must

4  have jurisdiction *before* it can refer a dispute to arbitration.  The arbitrability clause in

5  Section 29(i) would therefore only be invoked when the matter is referred to arbitration, at

6  which point an arbitrator would resolve any outstanding issues, including arbitrability.

7  Accordingly, it is the Court's responsibility to make the initial determination whether the

8  Joint Standing Committee has jurisdiction over this dispute in the first place.

9      This Court's precedent further supports this analysis.  In United Steelworkers of

10  America v. Phelps Dodge Corp., 764 F.2d 576 (9th Cir. 1985), the court was faced with

11  similar exclusion and arbitrability provisions as are present here.[2]  The Ninth Circuit

12  determined that the dispute fell squarely within the exclusion clause, thereby excepting the

13  dispute from the entire arbitration procedure established under Article VIII-F, including the

14  arbitrability clause under Article VIII-F(1)(d).  Id. at 579.   Likewise, here, the Court must

15  determine as a condition precedent whether the Joint Standing Committee has jurisdiction in

16  light of the exclusion clause, even though Section 29 of the CBA subsequently includes an

17  arbitrability clause placing the arbitrability decision solely within the purview of the

18  arbitrator.

19      Section 29(d) unambiguously excludes from the Joint Standing Committee's

20  jurisdiction any disputes over "the settlement of a new wage scale" between the parties.

21  According to plaintiff's characterization of the dispute, it concerns a purported oral promise

22  that guaranteed plaintiff one of two alternatives in future negotiations surrounding its wage

23  scale.  Pl. Reply at 5.  Construed liberally, plaintiff essentially argues that the Court should

---

[2]Article VI-C read, in pertinent part:

    It is understood that the determination of qualifications for hiring pursuant to this paragraph is not subject to the arbitration procedure of this Agreement.

Phelps Dodge, 764 F.2d at 578. Article VIII-F included a provision which allowed the parties to submit the arbitrability question to an arbitrator for a final determination. Id. Although both parties agreed to submit the arbitrability question to an arbitrator, they could not agree on other issues to be arbitrated, which prompted the plaintiff to file suit. Id.

8

draw a distinction between the establishment of a new wage scale and the enforcement of a promise about a new wage scale. That the Court is unwilling to do. As plaintiff notes, "Section 29(d) protects the right of the parties to negotiate wages to be paid under a successor contract by foreclosing an arbitrator's judgment as to that subject." Id. Yet that is precisely what plaintiff asks for: a decision determining that defendant did make a promise affecting the parameters of the negotiations of a new wage scale in a successor contract. The distinction between enforcing a *promise* about a new wage scale and enforcing a new wage scale is one without a practical difference. Either way, the decision would directly address the negotiations for a settlement of a new wage scale. Accordingly, the Court finds with positive assurance that the underlying dispute clearly and unambiguously falls within the language of the exclusion provision of Section 29(d), thereby stripping the Joint Standing Committee of jurisdiction over this dispute.

## CONCLUSION

Regardless of whether the underlying dispute is a term of the Supplemental Agreement, the dispute resolution procedures of Section 29 of the CBA must be applied here. The Court concludes that this dispute unambiguously falls under the exclusion clause in Section 29(d), thereby stripping the Joint Standing Committee of jurisdiction. Accordingly, plaintiff's motion for summary judgment is DENIED and defendant's cross-motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: June 13, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California